IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **Terri B.,**[1] | ) | |
| | ) | |
|     **Plaintiff,** | ) | |
| | ) | No. 24 C 50191 |
| v. | ) | |
| | ) | Magistrate Judge Laura K. McNally |
| **Frank Bisignano,** | ) | |
| **Commissioner of Social Security,**[2] | ) | |
| | ) | |
|     **Defendant.** | ) | |

## ORDER[3]

Before the Court is Plaintiff Terri B.'s memorandum in support of summary judgment, asking the Court to remand the Administrative Law Judge's ("ALJ") decision denying her applications for disability benefits (Dkt. 19: Pl. Mem. in Support of Summ. J., "Pl. Mem.") and Defendant's motion and brief in support of summary judgment (Dkt. 27: Def. Mot. to Remand; Dkt. 30: Def. Mem. in Support of Summ. J.).

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] The Court substitutes Frank Bisignano for his predecessor(s) as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On May 28, 2025, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (Dkt. 7.)

## I. Procedural History

Plaintiff applied for disability insurance benefits on December 22, 2021, alleging disability from September 30, 2018. (R. 15.) Plaintiff's date last insured was December 31, 2023. (R. 16.) Plaintiff's claims were initially denied on August 1, 2022 and upon reconsideration on January 27, 2023. (R. 15.) The ALJ held a telephone hearing on June 27, 2023 (*Id.*) On November 8, 2023, the ALJ issued a decision finding Plaintiff not disabled (R. 30), and Plaintiff subsequently appealed.[4] After considering the parties' briefs and evidence, the Court grants Defendant's motion for summary judgment and denies Plaintiff's motion.

## II. ALJ Decision

The ALJ applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 30, 2018. (R. 17.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of Lumbosacral Degenerative Disc Disease, Diabetic Autonomic Neuropathy, and Migraines, all of which significantly limit Plaintiff's ability to perform basic work-related activities for at least 12 consecutive months. (R. 18.)

---

[4] The Appeals Council subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

2

The ALJ also found that Plaintiff had the medically determinable but nonsevere impairments of diabetes mellitus, vitamin D deficiency, osteoporosis, insomnia, multiple acute injuries of the foot and wrist, hand tremors, bilateral leg swelling, hepatic steatosis with abnormal liver function, asthma, obstructive sleep apnea, gastroesophageal reflux disease, colon polyps, an anal fissure, hyperlipidemia, hypertension, periodic tachycardia, right breast mastodynia, stress urinary incontinence, thyroid nodules, kidney stones, age-related brain degrative changes, and obesity. (R. 18-20.) The ALJ further considered Plaintiff's dizziness but found that it was a non-medically determinable impairment because it was a symptom-based diagnosis with no objective findings. (R. 20.)

At Step Three, the ALJ found that none of Plaintiff's impairments met or equaled a Listing. (R. 20-22.) Before Step Four, the ALJ determined that Plaintiff has the residual functional capacity to perform the full range of sedentary work, except that she

> should not be required to climb ladders, ropes, and scaffolds, but can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant must avoid hazards including unprotected heights, dangerous moving machinery, and driving tasks. The claimant must avoid working at extreme temperatures and must avoid work with extreme pulmonary irritants.

(R. 22.)

At Step Four, the ALJ found that Plaintiff was unable to perform her past relevant work as an Accounts Payable Clerk or Procurement Clerk. (R. 28.) At Step Five

3

the ALJ found that Plaintiff has acquired work skills from past relevant work that are transferable to other jobs in the national economy consistent with her residual functional capacity. (R. 28-30.) As a result, the ALJ concluded that Plaintiff was not disabled. (R. 30.)

**III.    Legal Standard**

Under the Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022) An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us,

4

as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054.

The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit further has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

**IV.     Analysis**

Plaintiff contends that the ALJ did not build a logical bridge from the evidence to her finding of Plaintiff's residual functional capacity. (Pl. Mem. 5.) In doing so, Plaintiff challenges whether the ALJ supported her opinion with substantial evidence. First, Plaintiff argues that the ALJ ignored evidence of Plaintiff's vestibular dysfunction and erred when finding Plaintiff's dizziness nonsevere. (Pl. Mem. 8-12.) Second, Plaintiff asserts that the ALJ improperly analyzed the impacts of Plaintiff's migraines, cherry-

5

picking and inappropriately making medical determinations when reviewing her subjective symptoms. (Pl. Mem. 12-14.) Plaintiff maintains that both errors are not harmless because, with their limitations, Plaintiff would be rendered disabled. (Pl. Mem. 14.) This Court disagrees and affirms the ALJ's decision.

### A. The ALJ Supported the Residual Functional Capacity Determination with Substantial Evidence.

The ALJ substantially supported her conclusion that Plaintiff was not disabled. She considered both objective and subjective evidence to determine Plaintiff has a residual functional capacity for light work with additional limitations. While Plaintiff argues that the ALJ did not sufficiently account for evidence of Plaintiff's dizziness and migraines[5], Plaintiff points to no line of evidence that the ALJ ignored, nor proves any functional limitations the ALJ overlooked. Among the objective evidence the ALJ reviewed about Plaintiff's dizziness and migraines were:

- An examination, electroencephalogram, and MRI from before the alleged onset date in which Plaintiff's strength was "intact" at 5/5, reflexes were 2+, each of Plaintiff's sensation, gait, mood, speech, and memory were normal, and her brain showed no evidence of any abnormal activity for Plaintiff's age despite "prolonged complaints of dizziness and brain fog" (R. 23);

- September and October 2018 treatment notes in which Plaintiff's "physical functioning was normal" despite her "multiple physical health complaints" and where her gait, reflexes, strength, sensation, insight, memory, mood, affect, and orientation were normal (*id.*);

---

[5] Plaintiff does not dispute the ALJ's assessment of her other impairments. This Court will not review those components because any arguments related to them are waived.

- Examination notes from a physical examination in February 2019 in which Plaintiff's "physical functioning was grossly intact" despite "numerous physical complaints," her strength, reflexes, sensation, coordination, motion, and gait were all normal, and she "reported improved dizziness symptoms with the use of medication" (R. 24);

- A May 2019 tilt-table test to assess vertigo with normal results (*id.*);

- Treatment notes from two June 2019 visits, one in which Plaintiff "sought treatment for regular vertigo spells" but showed normal neurological functioning on a test, and the other in which Plaintiff's sensation and reflexes were intact, as well as her strength, mood, memory, and insight (*id.*);

- An October 2019 examination in which Plaintiff's nerve function and gait were normal (*id.*);

- Examination notes from November 2019 that showed Plaintiff's strength, reflexes, motion, cranial nerve function, sensation, mood, affect, insight, and memory were intact and normal (*id.*);

- An examination from December 2019 in which Plaintiff's cranial nerve function, sensation, muscle tone, coordination, and gait were normal other than with "a mild imbalance with a tandem gait," and where Plaintiff "could walk on her toes," had "speech [that] was fluent and understandable," and where Plaintiff had a prescription of Verapamil for migraines (*id.*);

- January 2020 treatment notes where Plaintiff "sought treatment for complaints of dizziness and headaches" and "reported that she experienced moderate headache symptoms between six to twenty-eight days a month" that cause nausea, photophobia, and phonophobia but in which she walked with a normal gait, had normal cranial nerve function, had normal results in a reflex screen and neurological exam, and was treated with Verapamil (R. 24-25);

- Examination notes from February 2020, May 2020, June 2020, and August 2020 that show Plaintiff's nerve function was intact, her sensation and reflexes were normal, her strength was 5/5, her speech was normal, her memory and insight were intact, her mood and affect were normal, there was no evidence of impaired extremity function, and her symptoms improved with conservative pharmacological treatment (R. 25);

7

- Treatment notes from September 2020 that show Plaintiff "reported that she continued to experience lightheadedness and chronic migraines with auras causing nausea and visual disturbances" and that she indicated "the migraine auras were particularly disabling," at which point Plaintiff was treated with Metoclopramide and Ondansetron for the migraine associated nausea (*id.*);

- Examination notes from December 2020, May 2021, July 2021, several visits in August 2021, October 2021, and December 2021 in which Plaintiff "was alert," had "intact" motor function and sensation, 5/5 strength, full range motion, had 2+ reflexes, walked with a slight limp once and otherwise had a normal gait, "physical functioning was normal," had normal mood, affect, and intact memory and insight (*id.*);

- Treatment records from March 2022 that show Plaintiff "was well-developed, well-nourished, and well groomed," as well as that Plaintiff had normal memory, insight, mood, affect, and was "fully oriented" (*id.*);

- Visit notes and MRIs from April 2022, June 2022, September 2022, October 2022, March 2022, and June 2023 showing no evidence of impairment and that despite some lower extremity swelling in two visits Plaintiff had full range of motion, 2+ reflexes, intact sensation, intact cranial nerve function, normal gait, normal memory, insight, mood, and affect, and was "fully oriented" (R. 25-26); and

- The observations of Plaintiff's consultative examiner, K.P. Ramchandani, M.D., who found that Plaintiff "did not show signs of dizziness," "walked with normal gait," "could walk on her heels and her toes," "was able to squat without support," had 5/5 strength in her extremities with normal muscle tone and mass, had normal coordination, had 2+ reflexes, had intact sensation, showed reduced range of motion, and "produced negative straight leg raise tests bilaterally." (R. 26.)

The ALJ additionally weighed the medical opinions in the record as support for her residual functional capacity assessment. (R. 26-27.) In considering such opinions, an ALJ is required to "evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's

8

familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022); s*ee also* 20 C.F.R. § 416.920c(c)(1)-(5). An ALJ must explain how she considered the first two factors, supportability and consistency, but is not required to explain her consideration of the other factors. 20 C.F.R. § 416.920c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle D.*, 2022 WL 972280, at *4; 20 C.F.R. § 416.920c(c)(1). "Consistency assesses how a medical opinion squares with other evidence in the record." *Id.*; *see also* 20 C.F.R. § 416.920c(c)(2).

One of these opinions was that of Plaintiff's treating doctor Irene Boswell, M.D., who observed that Plaintiff "was restricted to light duty and could not drive to work or use heavy machinery" in the summer of 2018. (R. 27.) Dr. Boswell opined that Plaintiff "could not perform her job at '100% due to episodic flare ups,' and as the result of influenza infections." (*Id.*) The ALJ determined that this opinion was persuasive as to its restrictions on heavy machinery and driving, but that the opinion overall was not supported by the record because it referred to acute infections or failed to provide a basis for its limitations. (*Id.*)

The ALJ evaluated the opinions of the state agency doctors as well. Both non-examining doctors opined that Plaintiff "could perform light work," except that she "must avoid concentrated exposure to extreme cold, extreme heat, fumes, odors, dusts,

9

gases, poor ventilation, other pulmonary irritants, and hazards." (*Id.*) The ALJ found these opinions unpersuasive because they were inconsistent with the overall record, which "provided evidence of degrative changes to [Plaintiff's] lower back and ongoing balance issues caused by diabetic neuropathy which would interfere with her ability to stand and walk for more than six hours in an eight-hour workday" (as required to perform light work). (R. 27.)

The ALJ ultimately provided a more restrictive residual functional capacity than that of any medical opinion. The ALJ limited Plaintiff to no more than sedentary work with no climbing and only occasional balancing, stooping, crouching, and crawling because of her allegations of back pain and impaired balance. (R. 28.) The ALJ also accommodated Plaintiff's claims of impaired mobility with further limitations on hazard exposure, including driving. (*Id.*) Moreover, the ALJ concluded that "temperature extremes and pulmonary irritants could worsen [Plaintiff's] headaches which supported limiting her exposure to those conditions." (*Id.*)

In such circumstances, the Seventh Circuit has stated, "the lack of an opposing medical opinion [imposing greater restrictions than those the ALJ found in his decision] makes it difficult for us to find that the ALJ misjudged the evidence so significantly as to warrant reversal." *Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023). Moreover, given that the ALJ found a more restrictive residual functional capacity than that of the medical opinions, the Court looks upon the decision favorably and considers the

10

finding one of "reasoned consideration." *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (an accommodation that is "more limiting than that of any state agency doctor or psychologist, illustrat[es] reasoned consideration given to the evidence.").

While Plaintiff argues that the limitations found by the ALJ were insufficient, she does not challenge the ALJ's analysis of the medical opinions in the record. Nor does she provide evidence to prove any additional functional limitations that she claims the ALJ ought to have found. *Megan G. v. Saul*, 19 C 5237, 2021 WL 2105038 at *9 (N.D. Ill., May 25, 2021), *citing Weaver v. Berryhill*, 746 F. App'x 574, 578-79 (7th Cir. 2018) ("It is the Plaintiff's burden to demonstrate how [she] is unable to perform particular functions because of [her] impairment."). Instead, Plaintiff challenges the ALJ's evaluation of Plaintiff's subjective symptoms. She argues that the ALJ incorrectly "relied on her own conjecture about plaintiff's physical exam findings and medical testing" to discredit these symptoms. (Pl. Mem. 7.) This Court disagrees. The Court will not overturn an ALJ's subjective symptom analysis unless it is patently wrong. *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); 20 C.F.R. § 404.1529(c); *see Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024).

In this case, the ALJ's reasons for discounting the severity of Plaintiff's symptoms were appropriate. The ALJ acknowledged Plaintiff's subjective reports, including that her "impairments caused her to experience leg pain, dizziness, and headaches," that "these symptoms could be sufficiently severe that all she could do was

11

rest," and that "rest days" were common. (R. 23.) The ALJ also considered Plaintiff's allegations that the impairments "caused her to be generally weak and unsteady," "interfered with her ability to lift objects," and "interfered with her capacity to sit, stand, and walk." (*Id.*) The ALJ further acknowledged Plaintiff's claim that her migraines "affected her ability to squat, bend, reach, kneel, and climb stairs" and "further limited her vision." (*Id.*) She also considered Plaintiff's reports of "chronic brain fog that affected her memory," as well as her alleged need for "multiple iterations of both written and spoken instructions," "longer than normal [time] to complete tasks," and "breaks while working on tasks." (*Id.*)

It was after evaluating Plaintiff's symptoms against the evidence that the ALJ found "they are inconsistent with the record." (R. 27.) For example, the ALJ pointed out that while Plaintiff "reported ongoing difficulty with balance," her "physical functioning was grossly intact," her sensation was normal, and she "walked with a normal unaided gait." (*Id.*) The ALJ noted that while Plaintiff "reported experiencing up to twenty-eight headaches a month," Plaintiff's "migraine headaches did not cause sufficient impairment to function to medically equal [a] listing . . . [she] did not lose any motor control during her migraines . . . physical functioning was intact [throughout the record] . . . sensation was intact . . . [she] walked with a normal, unaided gait." (*Id.*) The ALJ further found that while Plaintiff alleged "brain fog," and "periods of significantly impaired cognition with impaired word findings," "there was no evidence in the

12

record" of these symptoms and, "to the contrary, [Plaintiff] displayed a normal mood and affect with intact insight and memory during treatment." (R. 28.)

In addition to Plaintiff's symptom reports, the ALJ accounted for Plaintiff's reported functioning and activities of daily living. The ALJ considered that Plaintiff "read, watched television," "sewed for entertainment," "was able to manage her own funds," and "could drive." (R. 28.) The ALJ also observed that Plaintiff "attended family events and school events of her grandchildren," "displayed adequate social functioning during the hearing," and "was able to complete household tasks such as doing laundry, preparing meals, cleaning, and yardwork." (*Id.*) Observing these reports, the ALJ found that Plaintiff had "social functioning [that] appeared to be unimpaired" and showed "intact understanding, memory, concentration, and task persistence." (*Id.*)

Plaintiff argues that when evaluating Plaintiff's subjective symptoms, the "ALJ placed inordinate emphasis on the plaintiff's daily activities." (Pl. Mem. 7-8.) This Court disagrees. The ALJ found "in addition to [Plaintiff's] treatment notes" that her reported functioning and daily activities showed, overall, Plaintiff's "mental functioning was more intact than alleged." (*Id.*) The ALJ observed Plaintiff's daily activities as one subset of her subjective symptoms. "It is appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); 20 C.F.R. § 404.1529(c).

13

After discussing the evidence described above, the ALJ reviewed the medium exertional level required for Plaintiff's former positions and noted that the sedentary exertional limitation would preclude Plaintiff from performing at that level. (R. 28.) The ALJ relied on the vocational expert's testimony that over 550,000 jobs allow Plaintiff to transfer her Accounts Payable Clerk skills to similar roles at the sedentary level, making her capable of jobs that exist in significant numbers in the national economy. (R. 29.)

This Court disagrees that the ALJ omitted any necessary logical bridge in her analysis. The Court finds that the ALJ thoroughly considered both subjective and objective evidence in the record, articulated adequate reasoning for her evaluation, and supported her findings with substantial evidence.

### B. The ALJ Properly Evaluated Evidence Related to Plaintiff's Vestibular Dysfunction and Migraines.

Despite the ALJ's substantial evidentiary support for the residual functional capacity, Plaintiff insists that the ALJ erred in evaluating her dizziness and migraines. The Court disagrees.

As to Plaintiff's dizziness, Plaintiff first argues that the ALJ "did not perform a fair analysis of this record" because she ignored multiple lines of evidence related to Plaintiff's dizziness. She then asserts that the ALJ (a) inappropriately made medical determinations when deeming Plaintiff's dizziness subjective and (b) used the wrong standard to find the dizziness impairment nonsevere. (Pl. Mem. 8-9.)

14

In explaining her first point, Plaintiff contends that the ALJ "ignored lines of evidence including the full assessments and diagnoses of plaintiff's specialists," "ignored that plaintiff had been evaluated at Mayo Clinic," "ignored the line of evidence consisting of plaintiff's consistent complaints related to both dizziness and migraines going back to 2018," and "ignored the diagnosis of autonomic dysfunction in relation to plaintiff's migraines." (Pl. Mem. 8-9.) As a result, she argues, the ALJ "determined plaintiff's dizziness was without medical basis, but this is inaccurate." (Pl. Mem. 9.) The Court cannot agree.

"Although the ALJ may not ignore 'an entire line of evidence that supports a finding of disability,'" the ALJ is "not required to mention every piece of evidence." *See, e.g., Combs v. Kijakazi*, 69 F.4th 428 (7th Cir. 2023).

Here, the ALJ acknowledged Plaintiff's dizziness allegations and considered results from her examinations, all of which found Plaintiff's dizziness-related functioning objectively normal. (R. 23-27.) Whether or not the ALJ explicitly mentioned the diagnoses of each specialist or every document—including one about autonomic dysfunction, the Mayo Clinic notes, and complaints going back to 2018— the ALJ did account for Plaintiff's dizziness overall. It was this assessment of Plaintiff's dizziness as a line of evidence that led the ALJ to ultimately find the allegations inconsistent with the evidence. (R. 23.) Even if she did not mention every piece of evidence, the ALJ did not ignore an entire line.

Further, the ALJ had already analyzed these components in forming her ultimate opinion. Each of the two state agency doctors in this case reviewed the list of specialist notes/diagnoses, the Mayo Clinic notes, and complaints as early as 2018. (R. 76, 78-79, 84, 87.) The ALJ incorporated both opinions into her ultimate finding. (R. 27.) And, still, she found a more restrictive residual functional capacity and explicitly accommodated Plaintiff's headaches with additional limitations. (R. 27-28.)

In addition, the ALJ did not err when she determined that Plaintiff's dizziness is a symptom and not an individual impairment. Whether Plaintiff's dizziness was associated with an impairment or was a standalone symptom ultimately made no difference— the ALJ accounted for it all the same. And, contrary to Plaintiff's argument that the ALJ "made medical assumptions without basis" (Pl. Mem. 11), the ALJ took the appropriate steps to weigh all of the evidence. She made her inferences after she considered subjective complaints, objective tests and examination results, and medical opinions to determine the residual functional capacity. *Patricia B. v. Berryhill*, No. 17 CV 50201, 2019 WL 354888, at *2 (N.D. Ill. Jan. 29, 2019) (an ALJ "does not play doctor when he discusses and weighs the medical evidence and makes appropriate inferences from that evidence."); *see Olsen v. Colvin*, 551 F. App'x 868, 874 (7th Cir. 2014); *Seamon v. Astrue*, 364 F. App'x 243, 247 (7th Cir. 2010).

Finally, this Court cannot agree with Plaintiff that the ALJ erred in finding her dizziness not severe. The ALJ determined from the evidence that Plaintiff's dizziness

16

was non-medically-determinable. (R. 20.) And, despite doing so, the ALJ fully accounted for Plaintiff's subjective symptoms of dizziness in the residual functional capacity. The ALJ explicitly stated that Plaintiff's "impaired balance supported limiting the claimant to no more than sedentary work with no climbing of ladders, ropes, and scaffolders, occasional climbing of ramps and stairs, and no more than occasional balancing, stooping, crouching, and crawling." She also included that Plaintiff's "impaired mobility further supported prohibiting the claimant from exposure to hazards including driving." (R. 28.) Plaintiff's arguments amount to little more than a disagreement with the way the ALJ weighed the evidence concerning her dizziness, and this is not a ground for remand.

With respect to Plaintiff's migraines, Plaintiff contends that the ALJ did not "take a balanced view of the record" when she used Plaintiff's normal results to "negate" Plaintiff's subjective symptoms of migraines. (Pl. Mem. 13.) Plaintiff argues that the ALJ (1) "cherry picked" evidence of "good days as opposed to the ongoing issues with her migraines" (*id.*) and (2) inappropriately made medical determinations when she found that "the medical testing did not support that plaintiff's migraines" impact her ability to work. (Pl. Mem. 14.)

As with her consideration of Plaintiff's dizziness, the ALJ did not overlook nor ignore any evidence concerning Plaintiff's migraines. The ALJ weighed and accounted for examination records, medical test results, and other relevant treatment notes. She

17

considered Plaintiff's subjective allegations about her migraines before deciding her symptoms were not as severe as alleged. In addition, the ALJ relied on the analysis of Plaintiff's migraines in the medical opinions, none of which found any limitation needed for the migraines. (R. 27.)

Still, like she did for Plaintiff's dizziness, the ALJ nonetheless accommodated Plaintiff's migraines in the assessed residual functional capacity. The ALJ explicitly stated that "temperature extremes and pulmonary irritants could worsen [Plaintiff's] headaches which supported limiting her exposure to those conditions." (R. 28.) These limitations show that the ALJ exercised reasoned consideration. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Given that the ALJ supported her findings with substantial evidence, this Court will not substitute its judgement for that of the ALJ nor reweigh the evidence.

## CONCLUSION

For the reasons explained above, the Court denies Plaintiff's motion for summary judgment (Dkt. 19) and grants Defendant's motion to affirm the ALJ's decision. (Dkt. 30.)

**SO ORDERED.**

                                        ENTER:

                                        */s/ Laura K. McNally*

                                        **LAURA K. MCNALLY**
                                        **United States Magistrate Judge**

**DATED: June 6, 2025**